Edovidio R. CARRANZA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. CIV. A. 99–11292–REK.

United States District Court,
D. Massachusetts.

Feb. 29, 2000.

Edovidio R. Carranza, Shirley, MA, Pro se.

Edward J. Duffy, Terri J. Scadron, Office of Immigration Litigation, Washington, DC, Brenda M. O'Malley, Dept of Justice, Civil Division, Washington, DC, Frank Crowley, Immigration & Naturalization, Special Assistant U.S. Attorney, Boston, MA, Steven Farquharson, Immigration and Naturalization Service, John F. Kennedy Federal, Boston, MA, Michael P. Lindemann, Assistant Director, Washington, DC, for Immigration & Naturalization Service, US, Respondents.

## Opinion

KEETON, District Judge.

### I. Pending Matters

Pending before the court are the following:

(1) Petition for Writ of Habeas Corpus, filed in this court on June 16, 1999, by Edovidio R. Carranza (Docket No. 1);

(2) Respondent's Motion to Dismiss, filed on July 26, 1999 (Docket No. 4) with Memoranda in Support (Docket No. 5, filed July 26, 1999; Docket No. 14, filed November 9, 1999);

(3) Petitioner's Motion for Appointment of Counsel (Docket No. 11, filed October 18, 1999).

### II. Procedural and Factual Background

The Petition for Writ of Habeas Corpus was initially filed in the Board of Immigration Appeals, File No. A37–182–508, as a Request for Review of Order for Removal and Stay of Deportation.

A proceeding in the Court of Appeals for the First Circuit, in which petitioner sought direct review, was docketed as No. 99–1428. By Judgment of May 3, 1999, the Court of Appeals DISMISSED the petition because the record showed that petitioner could not obtain habeas relief in that court as an initial matter, since under Fed. R.App. P. 22(a) the "application for a writ of habeas corpus must be made to the appropriate district court."

The petition was thereafter filed in this court on June 16, 1999, as noted above (Docket No. 1 in this court).

The petition filed before the Immigration and Naturalization Services Office in Boston alleged that petitioner was indicted in the Suffolk Superior Court, Commonwealth of Massachusetts, for "(i) Assault and Battery, Dangerous Weapon; (ii) Dangerous Weapon, poss. gun, no license, on person in M.V.," that he pled guilty, and that he was sentenced on October 1, 1997.

The petitioner alleges that he made the

Plea Bargain to protect embarrassment to his family. However, he was not cognitive of the consequences that this would have on his stay in the United States. Although he has had sufficient years a "Permanent Resident" and free of any reasons for deportation, he was careless on his Application for Citizenship. His entire family being United States Citizenship.

File No. A37–182–508, Petition to Amend and to Remove Dangerous Weapon as Reason for Determining Deportation.

Respondent's Motion to Dismiss (Docket No. 4, filed July 26, 1999), together with Respondent's Return and Memorandum of Law in Support of Motion to Dismiss, and Stay Opposition (Docket No. 5), filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, assert a lack of subject matter jurisdiction to review the removal order issued against the petitioner by the INS on the ground that review of the order is governed by 8 U.S.C. § 1252(b)(9) and that the Supreme Court recently held applicable provisions of this statute to be an "unmistakable 'zipper clause'" that permits "'no judicial review in deportation cases unless this section [8 U.S.C. § 1252] provides judicial review'" citing *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 481–82, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999). *See* Docket No. 5, page 1.

Respondent contends that 8 U.S.C. § 1252 provides only for review by a Court of Appeals and not by a district court. Respondent's argument proceeds that this petitioner was placed into deportation proceedings after April 1, 1997, and that for this reason the "transitional rules" of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) do not apply to his case. *See* IIRIRA § 309(c), as amended by Act of Oct. 11, 1997, § 2, Pub.L. No. 104–302, 110 Stat. 3656, 3657.

Upon request of the court, respondent filed a copy of a document entitled "Matter of EDOVIDIO CARRANZA–RODRIGUEZ, Respondent: IN REMOVAL PROCEEDINGS, Transcript of Hearing," dated March 5, 1998, and June 2, 1998, certified as a verbatim transcript of the cassette tape provided by the Executive Office for Immigration Review. This transcript of the hearing before the Immigration Judge recites that the INS issued the Notice to Appear, instituting removal proceedings against Mr. Carranza, on December 12, 1997. It further states the bases for Carranza's removal as INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (an alien convicted of an "aggravated felony," defined at 8 U.S.C. § 1101(a)(43), which includes a crime of violence for which the term of imprisonment is at least one year), and INA § 237(a)(2)(C), 8 U.S.C. § 1227(a)(2)(A)(iii), (C) (Supp.1997) (an alien convicted of a firearms offense). The Transcript of the Removal Hearing recites also that the evidence presented before the Immigration Court established that: (1) Carranza is a native citizen of Guatemala who entered the United States as a lawful permanent resident on or about November 25, 1980; (2) he was on October 1, 1997, convicted upon a plea of guilty in the Suffolk Superior Court at Boston, Massachusetts for the offenses of assault and battery with a dangerous weapon and unlawful possession of a firearm and sentenced to a term of imprisonment of three years; and (3) removability "has been sustained, by evidence that is clear and convincing." *See* Docket No. 4 at 12–16. At the conclusion of the Removal Hearing of June 2, 1998, the Immigration Judge ordered that Carranza "be removed to Guatemala on the two charges in the Notice to Appear." *Id.* at 20.

The Per Curiam Order of the Board of Immigration Appeals (BIA), dated March 17, 1999, included within Docket No. 1, dismissed Carranza's appeal of the Immigration Court's decision. The BIA understood Carranza to be requesting a waiver of inadmissibility under INA § 212(c), 8 U.S.C. § 1182(c), a form of relief no longer available. *See* section 304(b) of the Illegal

Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub.L. No. 104–208, 110 Stat. 3009–546, 3009–596. The BIA also noted that Carranza was seeking "to collaterally attack his conviction," but determined that the Board would not "go behind his record of conviction to determine his guilt or innocence."

Carranza adds to the facts recited above the allegations that his common-law wife is a United States citizen, that his four children and two foster children are United States citizens, that he owns his own home in Maine, and, other than the incident at issue, has been a law-abiding and tax-paying resident of the United States for approximately twenty years. He further alleges that his attorney at trial failed to advise him of the consequences of pleading guilty to the weapons charges (both the possession count and the weapon component of the assault and battery count). Carranza argues that had he known the full consequences of his guilty pleas, he would never have plead guilty and instead would have gone to trial. Carranza argues that his attorney's failure to advise him about the consequences of his guilty plea, particularly in light of what Carranza asserts is compelling exculpatory evidence, constitutes constitutionally ineffective assistance of counsel.

## III. Jurisdiction

### A. Review of Federal Constitutional Claims

Insofar as Carranza is asking this court to review a final removal order the basis of which is the BIA's determination of the inapplicability of discretionary relief under INA § 212(c), 8 U.S.C. § 1182(c), or the BIA's determination of petitioner's eligibility for deportation in the first instance, as of 1996, both the Anti–Terrorism and Effective Death Penalty Act (AEDPA) and IIRIRA have amended the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, to divest this court of jurisdiction (hereinafter the "1996 Amend-

ments"). Jurisdiction for such review lies, when available, in the Court of Appeals. *See* 8 U.S.C. § 1252(b)(9), 1252(f), 1252(g); *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999) (concluding that IIRIRA divests a district court of jurisdiction to rule on the merits of the BIA's determination of deportability when that determination is based on the three discrete actions taken by the Attorney General enumerated under § 1252(g): her "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders").

To the extent that Carranza seeks habeas review of his underlying criminal conviction, the issue before me is close to but not identical with that I determined in another case recently before me. In that case, *Ramos–Flores v. INS,* 99–12246–REK (D.Mass. Dec. 28, 1999), I decided that this court has habeas jurisdiction to consider "fundamental constitutional questions" concerning the underlying conviction of an alien subject to removal, AEDPA and IIRIRA notwithstanding. *Ramos–Flores* at 12.

Unlike the petitioner in *Ramos–Flores,* Carranza did not plead guilty until after both AEDPA and IIRIRA had been enacted; I do not, therefore, need to return to the issues I addressed in *Ramos–Flores* concerning the troubling relationship between the newly-imposed consequences of a guilty plea, in some circumstances, and the newly-restricted scope of habeas jurisdiction. Because Carranza entered his guilty plea in October of 1997, after all of the new amendments to the INA were effective, however, petitioner's argument that his counsel was constitutionally ineffective in counseling him to plead guilty to an offense that would almost surely lead to petitioner's deportation, without informing him of that substantial consequence, is more compelling, on its face, than that in *Ramos–Flores.*

For the same reasons I described in *Ramos–Flores,* and taking into account

all of the statutory and precedential guidance available, and particularly the First Circuit's recent opinion in *Wallace v. Reno*, 194 F.3d 279 (1st Cir.1999), I conclude that dismissal of petitioner's writ on these grounds is inappropriate. I rule that to this extent, this court does have jurisdiction to make some kind of adjudication other than an immediate dismissal of this petition.

Because of the likelihood of review in a higher court and the advantages of having all issues ripe for review simultaneously rather than in successive appellate proceedings, I proceed to consider an alternative ground of jurisdiction.

## B. Review of Failure to Exercise Discretion

At the hearing on January 20, 2000, respondent asserted, in response to my questions, that the combination of AEDPA and IIRIRA had taken all discretion away from the INS to consider the relationship between the gravity of the offense and the individual circumstances of a resident alien at any stage, including the decision to institute removal proceedings. Respondent points to the Supreme Court's decision in *American–Arab* as support for the proposition that a district court does not have jurisdiction to review the INS's failure to exercise discretion. Although the Supreme Court, in *American–Arab*, did hold that § 1252(g) restricted judicial review, it does not go as far as respondent would like it to go. The Supreme Court held that § 1252(g) restricted judicial review of "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." *American–Arab*, 119 S.Ct. at 943 (internal quotations omitted). The Court reasoned that Congress intended, through § 1252(g), to protect the ability of the INS to make discretionary determinations in these three instances free from review in the courts.

Although this district court cannot review the decision that the INS reaches after exercising its discretion, this court can require that the INS exercise discretion rather than deciding that is has no discretion. The Supreme Court's decision in *American–Arab* was based on an understanding that the INS had discretion at various points in the removal process to consider the reasons for going forward with or halting proceedings in any individual case. It is a supportable argument that the INS is better positioned to make those discretionary decisions than a court. It is not clear, however, if the deference accorded the expertness of the INS by the courts imposes a corresponding duty on the INS to use its expertness in exercising discretion in individual cases. It seems that the INS may understand its role in the post-IIRIRA era to be merely executory; instituting removal proceedings, adjudicating cases and executing removal orders without any individual discretionary consideration. *See* Charles Radin, "INS Arrest Prompts Concern Deportation Pending for Youth Volunteer," *Boston Globe*, February 17, 2000, at B4 (reporting Steven Farquharson, regional director of the INS, as saying that the INS "has neither the capacity nor the right to investigate or take into account mitigating factors in cases that are referred to it" and quoting him as saying, "The way the immigration laws have been written, a person is classified as an aggravated felon fairly easily . . . . Once that happens, most forms of discretionary relief are prohibited. Most things cannot be taken into consideration by the INS or the immigration judge.").

■ In this case Mr. Carranza pleaded guilty on October 1, 1997, and the INS issued a Notice to Appear on December 12, 1997. It seems unlikely that the INS had time to investigate, compile information about Mr. Carranza's background and the offense, and make a discretionary determination about the propriety of instituting proceedings in that short time. I conclude that a decision regarding a discretionary determination has not been made and should have been made.

For this additional and independent reason, I should accept jurisdiction in this case for adjudication rather than immediate dismissal.

## IV.

My conclusion that a district court has jurisdiction to entertain Carranza's writ of habeas corpus does not, however, assure Carranza the relief he seeks. His petition is defective on non-jurisdictional grounds.

Petitioner argues that his trial counsel was constitutionally ineffective in counseling him in plea agreements. The court infers from his arguments that he attacks his counsel's effectiveness in two respects: first, his counsel allowed him to plead to the gun possession charges when exculpatory evidence was available (affidavit of Carranza's boss stating that the gun belonged to him); second, his counsel advised him to enter into a plea agreement, the consequence of which would likely include deportation, without informing him of this substantial risk. On its face, I find this a potentially viable Sixth Amendment claim of ineffective assistance of counsel. *See Libretti v. United States*, 516 U.S. 29, 50–51, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) (stating that "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo" and that "[a] failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea") (citations and quotations omitted).

 Although Carranza attempted to attack his underlying conviction on these grounds in proceedings before both the immigration judge and the Board of Immigration Appeals, neither of those forums is set up in a way that declares that it has jurisdiction to consider these arguments on their merits. Attacks on the validity of a state court conviction must be heard first in a state forum. To be successful on a claim of a Sixth Amendment right to effective assistance of counsel, petitioner is required to exhaust state remedies as to this claim. *See Mele v. Fitchburg District Court*, 850 F.2d 817, 820 (1st Cir.1988); *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir.1987). No evidence exists in the record before me of any appeals to the Massachusetts Court of Appeals or to the Supreme Judicial Court of Massachusetts regarding any post-conviction motions. For this reason, I cannot consider petitioner's claim on the merits. My authority to do so is barred by failure to exhaust state remedies.

## V. Conclusion

For the reasons stated in Part IV of the foregoing Memorandum, I conclude that dismissal of this petition is appropriate because Carranza has failed to exhaust state remedies. I conclude also, however, that because petitioner has attempted several times to make arguments attacking his underlying conviction in forums that were not authorized to hear them, petitioner should have the opportunity to make those arguments in the appropriate forum before the INS takes any action that would make a hearing on the merits impossible. I conclude that it is appropriate to order a temporary stay for eight weeks to allow time for petitioner to file an appeal of his underlying conviction in an appropriate state forum.

For the reasons outlined in part III.B above, I conclude that the INS erred in failing to make a discretionary determination as to the propriety of instituting, or proceeding with, removal proceedings in this case. Because it is unclear from the record to which INS forum this case should be remanded, I will remand this case to the BIA for it to determine the appropriate forum on the record as it may be developed before the BIA.

## ORDER

For the foregoing reasons, it is hereby ORDERED:

(1) Petitioner's Motion for Appointment of Counsel (Docket No. 11) is ALLOWED. The Clerk is directed to proceed in accordance with this court's plan and practice to obtain counsel, if feasible, to represent petitioner in all future proceedings in this court.

(2) Respondent's Motion to Dismiss (Docket No. 4) is ALLOWED.

(3) This case is remanded to the BIA for a discretionary determination of the propriety of having commenced proceedings against Carranza.

(4) The Clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

For the reasons stated in the Memorandum and Order of this date, it is ORDERED:

This civil action is dismissed.

This case is remanded to the BIA for a discretionary determination of the propriety of having commenced proceedings against Carranza.

Petitioner's ancillary motion for a temporary stay of deportation is allowed, and deportation is stayed for eight weeks from today, unless this stay is sooner terminated, or is extended, by an order of this or a higher court.

Final Judgment

For the reasons stated in the Opinion of this date, it is ORDERED:

This civil action is dismissed.

This case is remanded to the BIA for a discretionary determination of the propriety of having commenced proceedings against Carranza.

Petitioner's ancillary motion for a temporary stay of deportation is allowed, and deportation is stayed for eight weeks from today, unless this stay is sooner terminated, or is extended, by an order of this or a higher court.